IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN STANCU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-675-S-BN |
| | § | |
| HYATT CORPORATION/HYATT | § | (Consolidated with: |
| REGENCY, DALLAS, | § | No. 3:17-cv-2918-L) |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This single-party action filed by a plaintiff proceeding *pro se* raising claims of employment discrimination has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. Nos. 9 & 86.

Defendant Hyatt Corporation moves for summary judgment on Plaintiff John Stancu's claims. *See* Dkt. Nos. 82, 83, & 84. Mr. Stancu filed a response. *See* Dkt. Nos. 87, 88, & 89. And Hyatt filed a reply brief. *See* Dkt. No. 95.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss this action with prejudice.

## Applicable Background

Mr. Stancu was hired as a shift engineer at the Hyatt Regency Dallas in October of 2015, *see* Dkt. No. 89 at 4; Dkt. No. 84-1 at 1, and was still so employed at least at

the time Hyatt moved for summary judgment, *see* Dkt. No. 84-1 at 1. As a shift engineer – the entry-level position in the engineering position – Mr. Stancu's duties are to conduct repairs on guest rooms. *See id.*

And Mr. Stancu states in the affidavit that he made in response to the summary judgment motion that

> [a]bout one month after I started my job, several of my co-workers told me that Hyat is discriminating against them and asked me for advise. I gave them EEOC literature containing information about how to stand up to workplace discriminations.
>
> Hyatt found out about my distribution of EEOC antidiscrimination brochures in their hotel and immediately engaged in an onslaught of retaliations against me. The retaliations escalated daily under various forms: breaking the tools cart and stealing all the tools, one week suspension by not scheduling me to work, assigning me to jobs that were not part of my job duties or to jobs that I was not trained for, inserting derogatory and threatening notes in my tools cart (notes that contained insults about my age and death threats), denying any opportunity for promotion, repeated verbal warnings under false pretenses by chief engineer Arif Khan, extra scrutiny by following me even to the restroom, refusal to buy supplies needed for my job and my safety, using the work schedule as a retaliatory tool, impeding my doctors' appointments and medical treatment during my FMLA status, unfairly rating my job performance, harassing me even when I was off work by sending thousands of work orders to my personal e-mail address, assigning me to do work inside unventilated rooms infested with toxic and poisonous gases, a vicious move that caused ilness and tens of thousands of dollars in medical bills, directing workers from other departments to harass me, and too many other adverse actions to list here.
>
> Hyatt's campaign of discriminations and retaliations against me ceased about two months ago, but only after I filed two lawsuits.

Dkt. No. 89 at 4-5 (no alteration to original).

Despite these sworn allegations, Mr. Stancu does not controvert Hyatt's evidence showing that he has received a raise since starting his position and has never received

nor been subjected to a formal discipline, warning, demotion, suspension, or termination. *See, e.g.*, Dkt. No. 84-1 at 1.

Although Mr. Stancu has pleaded his legal claims in a somewhat confusing manner, those claims are liberally construed to allege that Hyatt (1) violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"); (2) unlawfully retaliated against Mr. Stancu; (3) unlawfully created a hostile workplace under the ADEA; and (4) violated his rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). *See* Dkt. Nos. 38 & 88. He further alleges (5) a breach-of-contract claim and (6) a pattern-and-practice claim. *See id.*

The undersigned will discuss each claim below.

**Legal Standards and Analysis**

I.    <u>Summary Judgment Standards</u>

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of

a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at

-4-

625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be

granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

II.    <u>Employment Discrimination Claims at Summary Judgment</u>

"In the employment discrimination arena, the 'salutary function of summary judgment' is that it 'allows patently meritless cases to be nipped in the bud.'" *Molden v. East Baton Rouge Sch. Bd.*, 715 F. App'x 310, 313 (5th Cir. 2017) (per curiam) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)).

And, in the absence of direct evidence, claims of employment discrimination and retaliation are analyzed under the framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), under which a plaintiff must first establish a prima facie case of discrimination or retaliation before the case may proceed. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.

2007); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216, 219 (5th Cir. 2016).

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy*, 492 F.3d at 557 (footnotes omitted); *see, e.g.*, *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 827-28 (5th Cir. 2015) (affirming the district court's recognition that, even where a plaintiff establishes a prima facie case, an employer "would nevertheless be entitled to summary judgment if it 'articulated a legitimate, nondiscriminatory ... reason for its employment action' and [the plaintiff] could not show a triable issue of fact as to whether 'the employer's proffered reason is not true but instead is a pretext' for a discriminatory purpose" (quoting *McCoy*, 492 F.3d at 557; original brackets omitted)); *see also Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) (per curiam) (holding that the same framework is applicable to non-direct evidence claims under the ADEA); *Caldwell*, 850 F.3d at 245 (holding that the same framework is applicable to non-direct evidence claims under the FMLA).

Furthermore, "the traditional leniency afforded to a pro se plaintiff does not excuse [Mr. Stancu] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs

don't have to submit competent evidence to avoid summary judgment, because they do."")); *see also Love v. Child Protective Servs.*, No. 3:16-cv-1973-B-BN, 2018 WL 704716, at *4 (N.D. Tex. Jan. 5, 2018) ("While *pro se* litigants ... 'are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, the [United States Court of Appeals for the] Fifth Circuit ... has never allowed *pro se* litigants, or any other type of litigants, to oppose summary judgments by the use of unsworn materials.'" (quoting *Burroughs v. Shared Housing Ctr.*, No. 3:15-cv-333-N-BN, 2017 WL 876333, at *3 (N.D. Tex. Jan. 31, 2017) (quoting, in turn, *Rodriguez v. Bexar Cty. Hosp. Dist.*, No. SA-14-CA-861-OG, 2015 WL 7760209, at *20 (W.D. Tex. Nov. 30, 2015) (collecting cases)), *rec. accepted*, 2017 WL 875853 (N.D. Tex. Mar. 3, 2017); internal quotation marks omitted)), *rec. accepted*, 2018 WL 708358 (N.D. Tex. Feb. 2, 2018).

III.    <u>Failure to Promote</u>

Mr. Stancu alleges that he is over 40 and that Hyatt violated the ADEA "by unfairly denying him even the opportunity to apply for promotion to the vacant Chief Engineer position." Dkt. No. 38 at 30. Mr. Stancu more specifically alleges:

> For more than six months during the first part of 2016, defendant had an opening for the Chief Engineer job. This position was vacant for a prolonged period of time and sometime during that job opening I informed Facilities Manager Brandon Murrell that I am interested in applying for it, and I also asked him about the qualification requirements. Mr. Murrell told me that, quote: "Unfortunately, the higherups are looking for someone from outside who can best connect with our guests." When I asked him about the meaning of that corporate speak, he said "This means younger." At that point it was very clear for plaintiff that the promotion door for him was permanently shut.
> Few weeks after the above mentioned conversation, defendant did

indeed hired someone much younger than plaintiff, and with less hotel engineering experience in United States than plaintiff: Mr. Arif Khan.

*Id.* at 13-14 (no alteration to original).

"The ADEA makes it unlawful to 'discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age.'" *Tratree*, 277 F. App'x at 395 (quoting 29 U.S.C. § 623(a)(1)). And, for a plaintiff to establish a prima facie case of failure to promote in violation of the ADEA, he "must show: (1) he was over forty, (2) was qualified for the position sought, (3) was not promoted, and (4) the position was filled by someone younger or the failure to promote was due to his age." *Id.* (citing *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998)).

An ADEA failure-to-promote-claim must also be timely, which here means that Mr. Stancu "was required to file an EEOC charge of discrimination within 300 days 'after the alleged unlawful employment practice occurred.'" *Drechsel v. Liberty Mut. Ins. Co.*, 695 F. App'x 793, 796-97 (5th Cir. 2017) (per curiam) (quoting 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A)-(B)). Thus, if an applicable charge was not filed within 300 days after Mr. Khan was hired as the Chief Engineer, this claim is not timely. *See id.* ("The purpose of requiring a plaintiff to show a younger comparator who was promoted is that said showing is a necessary component of establishing discrimination in the first instance. If no employees whatsoever are promoted to the position at issue in the applicable time frame, then that tends to undermine the argument that a specific employee was not promoted for discriminatory reasons. [A

plaintiff] cannot establish that he was not promoted for discriminatory reasons simply because a younger employee was promoted years before the timeframe covered by his complaint." (footnote omitted)).

Mr. Khan was hired as Chief Engineer on August 30, 2016. *See* Dkt. No. 84-1 at 2. While Mr. Stancu filed his first EEOC charge in December of 2016, that otherwise detailed charge, *see, e.g.*, Dkt. No. 84-1 at 93-94 (Stancu's affidavit), failed to include allegations that could support a failure-to-promote claim, *see id.* at 74-95; *see also Anderson v. Venture Express*, 694 F. App'x 243, 247 (5th Cir. 2017) (per curiam) ("While a cause of action may be based on 'any kind of discrimination like or related to the charge's allegations' it is 'limited ... by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges.'" (quoting *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (quoting, in turn, *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)))).

And, although Mr. Stancu's second EEOC charge did mention that he was "den[ied] any opportunity for promotion," Dkt. No. 84-1 at 98, it was not filed until July 31, 2017, *see id.* – outside the 300-day window that opened when Mr. Khan was hired, which closed on June 26, 2017.

In sum, then, "in the absence of any evidence that a younger similarly situated [Hyatt] employee was promoted in the applicable time frame," Mr. Stancu's ADEA failure-to-promote claim is time-barred. *Drechsel*, 695 F. App'x at 797; *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2013) ("Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can

-10-

be shown that the discrimination manifested itself over time, rather than in a series of discrete acts." But "discrete actions, such as [failure to promote], are not entitled to the shelter of the continuing violation doctrine." (citing *Huckabay v. Moore*, 142 F.3d 233, 238-40 (5th Cir. 1998))); *Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 356-57 (5th Cir. 2013) (per curiam) ("[W]here the employee complains of 'separate and varied acts and decisions that occurred at different times,' and the record does not confirm 'an organized or continuing effort to discriminate,' [the Fifth Circuit] has declined to apply the continuing violations doctrine." (quoting *Frank*, 347 F.3d at 136)).

Even if this claim is timely, Mr. Stancu has not shown a prima facie case by coming forward with evidence to show that he was qualified for the Chief Engineer position.

"At the prima facie stage, [Mr. Stancu's] burden regarding establishment of qualification is not onerous; [he] simply must provide evidence that [he] met the objective qualifications for the position, although [he] need not show that [he] was better qualified than the individual selected." *Hamlett v. Gonzales*, No. 3:03-cv-2202-BH, 2005 WL 1500819, at *16 n.15 (N.D. Tex. June 15, 2005) (citing *Medina v. Ramsey Steel*, 238 F.3d 674, 681 (5th Cir. 2001) ("[I]t is inappropriate to decide as a matter of law that an employee is unqualified because he has failed to meet entirely subjective hiring criteria. Instead, an employee must demonstrate that he meets objective hiring criteria at the prima facie case stage, and the issue of whether he meets subjective hiring criteria is dealt with at the later stages of the analysis." (citations omitted))).

Here, Mr. Stancu "has failed to meet [his] summary judgment burden of pointing

to specific evidence in the record establishing that [he] was qualified" to be Chief Engineer. *Id.*; *see also* Dkt. No. 84-1 at 1 (Aff. of Mark Spinelli, Hyatt Regency Dallas Director of Human Resources, explaining that "[a] shift engineer is an entry-level position in the engineering department. The progression of promotions for a shift engineer is as follows: mechanic, then engineering lead/supervisor, then assistant director of engineering, and then chief engineer."); *Dashtgoli v. Experience Works, Inc.*, No. A-05-CA-1034-RP, 2007 WL 9701567, at *5 (W.D. Tex. Sept. 19, 2007) ("The undisputed summary judgment evidence establishes that Plaintiff cannot be considered qualified for a position that he was not eligible to hold.").

Mr. Stancu has therefore not shown a prima facie case of failure to promote under the ADEA.

But, to the extent that Mr. Murrell's purported statement to Mr. Stancu can be considered direct evidence of age discrimination, Hyatt "bears the burden of proving 'that it would have taken the same action[ – hiring Mr. Khan as opposed to allowing Mr. Stancu to leapfrog from an entry-level position to Chief Engineer – ]regardless of discriminatory animus.'" *Maestas v. Apple, Inc.*, 546 F. App'x 422, 425 (5th Cir. 2013) (per curiam) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)). And, here, Hyatt meets that burden through Mr. Spinelli's unchallenged affidavit.

## IV.  Retaliation

"Title VII, the ADEA, ... and the FMLA" – among other statutes – "all contain provisions prohibiting retaliation for asserting the rights or enjoying the benefits under

those statutes." *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (per curiam) (citing, as applicable here, *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (Title VII); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (ADEA); *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (FMLA)).

"In the retaliation context, a prima facie case requires a showing that (1) [Mr. Stancu] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Id.* (citation omitted).

And the adverse-employment-action prong "require[s] an 'ultimate employment decision' or its factual equivalent." *Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 396-97 (5th Cir. 2016) (per curiam) (citing *McCoy*, 492 F.3d at 560; *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014)). This "judicially-coined term refer[s] to an employment decision that affects the terms and conditions of employment ... such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson*, 764 F.3d at 503 (citations omitted); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (holding that the anti-discrimination provision of Title VII "explicitly limit[s] the scope of that provision to actions that affect employment or alter the conditions of the workplace"); *see also Thomas v. Johnson*, No. 3:15-cv-1005-N-BN, 2015 WL 5326192, at *6 (N.D. Tex. Aug. 7, 2015) ("Threats, reprimands, and warnings, because they do not constitute ultimate decisions, do not suffice as adverse employment actions." (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th

Cir. 1997))), *rec. accepted*, 2015 WL 5397802 (N.D. Tex. Sept. 14, 2015).

To support this prong, Mr. Stancu offers an affidavit in his opposition to summary judgment alleging – but not asserting detailed facts to support – Hyatt's "onslaught of retaliations against" him, including stealing his tools; not scheduling him to work for one week; assigning him to jobs outside his job duties or training; verbally warning him; and sending work orders to his personal email address. Dkt. No. 89 at 4-5.

First, Mr. Stancu's evidence (his affidavit) is concluory.

"[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). "The party opposing summary judgment must come forward with specific facts showing that there is a genuine issue for trial. Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment." *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992).

*Richardson v. Monitronics Int'l, Inc.*, No. 3:02-cv-2338-N, 2004 WL 287730, at *6 (N.D. Tex. Jan. 27, 2004); *see also, e.g.*, *Wheat v. Fla. Parish Juvenile Justice Comm'n*, 811 F.3d 702, 707 (5th Cir. 2016) ("A bare-bones allegation that an assignment of janitorial duties is a materially adverse action is only an unsupported conclusory claim. Such a bare allegation fails to provide the contextual detail that is required for materially adverse actions." (citation omitted)).

And Mr. Stancu offers no evidence that any of the alleged retaliatory acts were either intentionally taken by Hyatt or ultimate employment decisions. For example,

as to his being left off the work schedule for one week, he testified at his deposition that, during that week, he called in sick, received sick pay, and was placed back on the schedule the next week. *See* Dkt. No. 84-1 at 14-19; *cf. Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017) (holding "that a suspension without pay *could* constitute a materially adverse action, depending on the circumstances," but not where a plaintiff "has not shown that his suspension exacted a physical, emotional, or economic toll" and instead only "offers conclusional statements attesting to the emotional or psychological harm he suffered because of the ... suspension" and "provides no documentation of any alleged harm" (applying *White*, 548 U.S. at 70-73; citation omitted; emphasis in original)).

Mr. Stancu has therefore not shown a prima facie case of retaliation.

## V.    Hostile Work Environment

Mr. Stancu next advances a hostile-work-environment claim under the ADEA, the prima-facie elements of which are that

> (1) he was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

*Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (citing *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996)).

Critically, to satisfy the third prong here, "the complained-of conduct" must be based on age and also

> must be both objectively and subjectively offensive. This means that not

> only must a plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. To determine whether conduct is objectively offensive, the totality of the circumstances is considered, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance."

*Id.* (citing and quoting *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007)).

The only age-based harassment that Mr. Stancu offers evidence of are the notes that contained insults about his age that were left on his tool cart. And he has not shown that these age-based offenses considered alone are objectively offensive. *Cf. Hackett v. United Parcel Serv.*, ___ F. App'x ____, No. 17-20581, 2018 WL 2750297, at *4 (5th Cir. June 6, 2018) (per curiam) (even crediting a plaintiff with some of the various acts that he "denied ... were motivated by his national origin, race, or age," finding that he failed "to establish the sort of 'severe or pervasive' harassment that is required for a hostile work environment claim" (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012))).

Mr. Stancu also admitted at his deposition that he had no suspicions of who left the notes on his cart and did not ask anyone in Hyatt's management if they were responsible for the notes, *see* Dkt. No. 84-1 at 38-39, thus negating the fourth prong – that "there exists some basis for liability on the part of the employer," *Dediol*, 655 F.3d at 441.

Mr. Stancu has therefore not shown a prima facie case of a hostile work environment under the ADEA.

VI.    <u>FMLA Interference</u>

"The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1)(D)), *abrogated on other grounds by Wheat v. Fla. Parish Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016). And, "[t]o ensure employees the right to take leave, the FMLA prohibits an employer from 'interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right' provided by the Act." *Caldwell*, 850 F.3d at 245 (quoting 29 U.S.C. § 2615(a)(1)).

> To establish a prima facie case of interference under the FMLA, [Mr. Stancu] must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA.

*Id.* (citing *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (per curiam) (citing, in turn, *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012))).

Mr. Stancu may allege that Hyatt interfered with his taking leave under the FMLA. *See* Dkt. No. 28 at 22-29 & 39-42. But he fails to offer evidence to show that Hyatt "denied him the benefits to which he was entitled under the FMLA." *Caldwell*, 850 F.3d at 245. In fact, he admitted during his deposition that Hyatt has not denied him FMLA leave. *See* Dkt. No. 84-1 at 28-32 & 50-51; *see also id.* at 31 ("Q. So your complaint is not that you're being denied the time off, it's just that the procedure -- A. Makes it hard. Q. -- to take the time off is difficult? A. Yeah. They make it harder.").

-17-

Under the FMLA,

> [t]he difference between an interference and retaliation claim "is that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006). "The lines between the two categories of FMLA claims is not hard and fast." *Id.* (citation and quotations omitted). However, "to prove an interference claim, a plaintiff 'must at least show that the defendant interfered with, restrained, or denied his exercise or attempt to exercise FMLA rights, and that the violation prejudiced him.'" *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)).

*Jiles v. Wright Med. Tech., Inc.*, 313 F. Supp. 3d 822, 844 (S.D. Tex. 2018) (citation modified; original brackets omitted); *see Downey v. Strain*, 510 F.3d 534, 539-40 (5th Cir. 2007) ("[T]he FMLA's remedial scheme ... requires an employee to prove prejudice as a result of an employer's noncompliance." (relying on *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir. 2006))); *see also Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.*, 715 F. App'x 351, 357 (5th Cir. 2017) (per curiam) ("Eaton-Stephens testified that Valamides discouraged her from taking FMLA leave and that her co-workers harassed her for taking leave, but does not testify that she took less leave because of these actions. Therefore, any error in concluding Eaton-Stephens failed to properly plead an FMLA claim would be harmless, because she did not meet her burden to produce evidence that there was actual interference with her FMLA rights."); *Richardson*, 2004 WL 287730, at *3 ("Richardson simply does not allege any days for which she required FMLA-eligible leave, was denied such leave, and reported to work. At the very least,

an employee requesting relief for violations of Section 2615 of the FMLA must allege interference with, restraint of, or denial of her exercise of FMLA rights. 'Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation.' In the instant matter, Richardson fails to allege in even a general manner that Monitronics denied her any intermittent leave – or any other benefit guaranteed by the FMLA – following her statement in July of 2001 that she would 'possibly need FMLA.' Accordingly, Richardson has not raised a genuine issue of material fact that she was denied leave following her July 2001 request." (citation omitted)); *Shields v. Boys Town La., Inc.*, 194 F. Supp. 3d 512, 527 (E.D. La. 2016) ("[A]s Shields has not identified any interference, restraint or denial of her FMLA rights, the Court grants summary judgment on Shields' interference claim.").

And, despite Mr. Stancu's testimony that could be construed as establishing that Hyatt's procedures for taking FMLA leave were onerous to him, "[a]n employer may [ ] require that an employee hew to the employer's usual and customary procedures for requesting FMLA leave." *Acker*, 853 F.3d at 789.

Mr. Stancu has therefore not shown a prima facie case of interference under the FMLA.

## VII.    Breach of Contract

Mr. Stancu further contends that Hyatt breached its employment contract with him by "coerc[ing him] into performing jobs that are not part of [their alleged oral employment] contract." Dkt. No. 38 at 43. But, as Mr. Stancu admitted he understands, Texas is an at-will employment state. *See* Dkt. No. 84-1 at 25-27 ("Q. And

when I'm saying at will employment, I just mean the concept -- A. Yeah, yeah, no. I know the concept. Q. -- that an employer or -- A. Yes. Q. -- an employee is free to terminate the employment relationship at any point. A. Oh, of course, yes. Q. And with that understanding, you are an at will employee of Hyatt, correct? A. Yeah, yeah, yeah.").

And, as the Texas Supreme Court has explained, in response to a certified question from the Fifth Circuit,

> "if the employer or employee can avoid performance of a promise by exercising a right to terminate the at-will relationship, which each is perfectly free to do with or without reason at any time, the promise is illusory and cannot support an enforceable agreement," nor support a cause of action for fraud or breach of contract.

*Fred Loya Ins. Agency, Inc. v. Cohen*, 446 S.W.3d 913, 929 (Tex. App. – El Paso 2014, pets. denied) (quoting *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 399 (Tex. 2014)).

As a consequence, Hyatt should be granted judgment as a matter of law on Mr. Stancu's breach-of-contract claim.

## VIII.    Pattern or Practice

Finally, to the extent that Mr. Stancu alleges a separate claim – under Title VII, for example – based on a "pattern or practice," *e.g.*, Dkt. No. 38 at 32-35,

> [a] pattern or practice case is not a separate and free-standing cause of action ... , but is really "merely another method by which disparate treatment can be shown," *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1219 (5th Cir. 1995). The typical pattern or practice discrimination case is brought either by the government or as a class action to establish "that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." *Int'l Bhd. of Teamsters v. United*

-20-

*States*, 431 U.S. 324, 360 (1977).

*Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001) (citation and quotation modified), *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *see also id.* at 356 ("Given the nature and purpose of the pattern and practice method of proof, this Court's precedents, and the precedents of other circuits, the district court did not err in refusing to apply the *Teamsters* method of proof as an independent method of proof to the appellants' individual claims in lieu of the *McDonnell Douglas* method at the summary judgment stage.").

Hyatt should therefore be granted judgment as a matter of law on any pattern-and-practice claim made by Mr. Stancu.

## Recommendation

The Court should grant Defendant Hyatt Corporation's motion for summary judgment [Dkt. No. 82] and dismiss this action with prejudice

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

-21-

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 28, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-22-